UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Timothy Ketcham,

    Plaintiff,

    v.                                         Civil Action No. 5:10-CV-140

Social Security Administration,
Commissioner,

    Defendant.

## REPORT AND RECOMMENDATION
(Docs. 11, 16)

Claimant Timothy Ketcham brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and reversal of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Ketcham's Motion seeking an order reversing the Commissioner's decision and remanding for further proceedings (Doc. 11), and the Commissioner's Motion seeking an order affirming the same (Doc. 16).

For the reasons set forth below, I recommend that the Court GRANT Ketcham's motion to reverse and remand (Doc. 11) and DENY the Commissioner's motion to affirm (Doc. 16). Pursuant to Local Rule 7(a)(6), and no party having made a written request for oral argument, I find that oral argument is not required.

**Background**

I.    **Relevant Facts**

Ketcham was 45 years old on the alleged disability onset date.  (Administrative Record ("AR") 122.)  He graduated from high school in 1978 and has completed vocational training through his prior work as a mechanic and auto technician.  (AR 29, 150.)  Ketcham lives with his mother and has one adult son with whom he does not have regular contact.  (AR 123.)  He has a history of alcohol abuse but has not consumed alcohol in more than eight years.  (AR 364, 405.)  Ketcham applied for disability insurance benefits and supplemental security income based upon diagnoses of degenerative disc disease of the lumbar spine, non-cardiac chest pain, adjustment disorder, right shoulder labral tear, and left knee patellar impact injury.  (AR 14, 33, 144, 195.)

Ketcham worked as a mechanic and auto technician from 1985 to 2005.  (AR 145.)  In an October 2007 disability report (Form SSA-3368), Ketcham reported that he injured his back in September 2005 and became unable to work as a result of his condition in December 2005.  (AR 144.)  Subsequent reports from 2008 show that Ketcham reported a "right shoulder tear condition" that "causes right hand [and] fingers [to be] numb" and "loss of movement in right arm."  (AR 187.)  He further reported at that time that his back pain caused him difficulty in getting out of bed and that he was experiencing knee pain.  (AR 181-82, 191.)

In his 2007 Function Report, Ketcham stated that his daily activities consist of a shower, low back exercises, lying on a heating pad, light household chores, and watching

television.  (AR 165.)  Ketcham further reported that his condition wakes him from sleep every night and that he has difficulty putting on socks and shoes by himself and using the toilet.  (AR 166.)  He is able to do some basic meal preparation and minimal housework, but no yard work due to his back pain.  (AR 167-68.)  Ketcham cannot drive a car, and when he leaves the home he needs someone to accompany him because he has "difficulty lifting [his] left leg especially walking up stairs."  (AR 168-69.)  He reported that he shops weekly for groceries and is able to handle money on his own when he has an income.  (AR 168-69.)  Ketcham is unable to do any hobbies he once did, including sports and outdoor activities, and he has limited social interaction with friends.  (AR 169.)

Ketcham further reported that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  (AR 170.)  Specifically, he reported that he can lift no more than fifteen pounds and can walk only 500 feet before requiring three to five minutes of rest.  (AR 170.)  He requires a back brace (AR 171) and walks with a limp.  (AR 35).  Ketcham can follow written and spoken directions well, handle stress and changes in routine, and get along with authority figures.  (AR 171.)

At the time of his hearing before Administrative Law Judge ("ALJ") Edward Hoban, Ketcham reported taking oxycodone, lisinopril, and Zanaflex.  (AR 39.)  He testified that these medications make him groggy during the day (AR 41) and that, despite the medications, he has difficulty with any kind of mobility due to pain and numbness:

I can't put . . . a lot of weight on my left leg. And I limp. So I'm unable to
stand and bear weight on both legs. So it's difficult[ ]. I have to be careful
about my balance. And it's difficult for me to maneuver because of the
limp and the condition with the pain radiating down my left leg.

(AR 35.)  Ketcham further testified that he has experienced continued problems with his

right shoulder since he had surgery to repair a labral tear in 2008.  He relies primarily on

his left hand due to numbness in his right hand as a result of his shoulder condition.  (AR

37-39.)  When asked if he could lift or carry things, Ketcham stated:  "Just getting myself

around is a task.  So I don't usually try to carry anything."  (AR 40.)

## II.    Procedural History

On June 28, 2007, Ketcham applied for disability insurance benefits and

supplemental security income, alleging that he became disabled on September 14, 2005

due to degenerative disc disease of the lumbar spine, non-cardiac chest

pain/hyperventilation/costochondritis, adjustment disorder, right shoulder labral tear, and

left knee patellar impact injury.  (AR 14, 144, 195.)  His applications were denied

initially and upon review by a federal reviewing official, and Ketcham timely requested

an administrative hearing, which occurred on December 2, 2009.  (AR 11-20, 26-54, 62-

67, 71-76, 79.)  Ketcham testified at the hearing and was represented by counsel.  (AR

26-54.)

On January 25, 2010, the ALJ issued a partially favorable decision finding that

Ketcham was disabled beginning September 1, 2009 and continued to be disabled

through the date of the decision.  (AR 12, 20.)  The ALJ also found, however, that

Ketcham's date last insured was June 30, 2009.  (AR 12.)  Inconsistently, the ALJ then

concluded that "the insured status requirements . . . were met as of the date disability is established." (*Id.*)

The Decision Review Board ("DRB") selected the ALJ's decision for review and issued a "corrective, partially favorable decision." (AR 4.) The DRB adopted the ALJ's statements regarding the applicable law and "all of the [ALJ]'s findings and conclusions of law except for the [ALJ]'s finding with respect to the claimant's date last insured and decision with respect to the claimant's application for a period of disability and disability insurance benefits." (*Id.*) The DRB corrected "the defective language in the [ALJ's] decision . . . with respect to the claimant's date last insured," stating that it "takes this action to make it clear that the claimant no longer met the insured status requirements of the Social Security Act" on his September 1, 2009 disability onset date "and that he, therefore, is not . . . entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act." (*Id.*) The decision of the DRB noted, however, that the ALJ's findings with respect to Ketcham's application for supplemental security income remained unchanged. (*Id.*) Having exhausted his administrative remedies, Ketcham timely filed the instant action on June 16, 2010. (Doc. 5.)

### **ALJ Determination**

Because the DRB adopted the ALJ's statements regarding the applicable law and the majority of the ALJ's findings and conclusions of law, the undersigned summarizes the ALJ's statements, findings, and conclusions below.

I.       **Five-Step Sequential Evaluation Process**

The Commissioner uses a five-step sequential process to evaluate disability

claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step

requires the ALJ to determine whether the claimant is presently engaging in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so

engaged, step two requires the ALJ to determine whether the claimant has a "severe

impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant

has a severe impairment, the third step requires the ALJ to make a determination as to

whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).

The claimant is presumptively disabled if the impairment meets or equals a listed

impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to

consider whether the claimant's "residual functional capacity" ("RFC") precludes the

performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The

fifth and final step requires the ALJ to determine whether the claimant can do "any other

work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving

his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a

"limited burden shift to the Commissioner" to "show that there is work in the national

economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)

(clarifying that the burden shift to the Commissioner at step five is limited, and the

Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

## II.    ALJ's Written Decision

Employing this five-step analysis, ALJ Hoban first determined that Ketcham has not engaged in substantial gainful activity since his alleged onset date of September 15, 2005. (AR 14.)  At step two, the ALJ found that Ketcham has the severe impairment of degenerative disc disease of the lumbar spine.  (*Id.*); *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).  At step three, the ALJ found that Ketcham does not have an impairment or combination of impairments that meets or medically equals a listed impairment.  (*Id.*)  *See* 20 C.F.R. Part 404, Subpart P, Appx. 1.  The ALJ also found that "[t]he neurological and other clinical and objective findings and test results do not demonstrate a back impairment of listing-level severity under Listing 1.04."  (*Id.*)

Next, the ALJ determined that Ketcham has the RFC to perform sedentary work,[1] except that he "is limited to lifting and carrying ten pounds both occasionally and frequently; standing and walking two hours and sitting a total of six hours in an eight hour work-day; occasional climbing, crouching, and crawling; no climbing of ladders, ropes or scaffolds; and frequent balancing, stooping, and kneeling."  (AR 15.)  The ALJ added the additional limitations as follows:  Ketcham "is to avoid concentrated exposure

---

[1] Pursuant to 20 C.F.R. § 404.1567(a), "sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

to extreme of temperature, wetness, vibration, and hazards." (*Id.*)  The ALJ explained

that, although Ketcham's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, his statements concerning the intensity,

persistence, and limiting effects of those symptoms "are not entirely credible to the extent

they are inconsistent with the sedentary-range [RFC] assessment." (AR 16.)  In support

of this credibility determination, the ALJ referenced the objective medical evidence, the

subjective factors including Ketcham's reported activities, and the opinion evidence.

(AR 15-17.)  The ALJ also considered the factors set forth in Social Security Ruling

(SSR) 96-7p. (*Id.*)

The ALJ next determined that Ketcham is unable to perform his past relevant

work. (AR 18.)  At step five, the ALJ determined that considering Ketcham's age,

education, work experience and RFC, "[p]rior to September 1, 2009, there were jobs that

existed in significant numbers in the national economy that [he] could have performed."

(AR 19.)  The ALJ further concluded that, "beginning on September 1, 2009, . . . there

are no jobs that exist in significant numbers in the national economy that [Ketcham]

could perform." (*Id.*)  Accordingly, the ALJ found that Ketcham "was not disabled prior

to September 1, 2009 . . . but became disabled on that date and has continued to be

disabled through the date of this decision." (*Id.*)  The ALJ arrived at this decision based

upon his conclusion that, on September 1, 2009, Ketcham's age category changed "to an

individual closely approaching advanced age" because he was to attain the age of 50 on

March 1, 2010.  (AR 18.)  *See* 20 C.F.R. §§ 404.1563, 416.963.

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

The reviewing court's role with respect to the Commissioner's disability decision is "'quite limited[,] and substantial deference is to be afforded the Commissioner's decision.'" *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quoting *Burris v. Chater*, No. 94 Civ. 8049, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)). The court should not substitute its judgment for that of the Commissioner. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). The Second Circuit explained: "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having 'rational probative force.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Consol. Edison Co.*, 305 U.S. at 230).

Therefore, if the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists. *See Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990); *DeChirico v. Callahan*, 134 F.3d 1177, 1182-83 (2d Cir. 1998).

<u>**Analysis**</u>

Ketcham argues that the ALJ erred by: (1) concluding that Ketcham's right shoulder impairment was not severe; (2) failing to address Dr. Stephen Kornbluth's treating source statement regarding Ketcham's problems with attention and concentration; (3) failing to reflect such limitations in Ketcham's RFC; and (4) using an incorrect date in applying Medical-Vocational Rule 201.21. (Doc. 11 at 3-8, 8-11, 11-

15.)  The Commissioner asserts that the ALJ's decision is supported by substantial

evidence.  (Doc. 16 at 1.)

Upon review of the administrative record, I find that the ALJ's conclusion that

Ketcham's right shoulder impairment is not severe is unsupported by substantial

evidence.  Accordingly, I recommend that the Court reverse the decision of the

Commissioner and remand for further proceedings consistent with this Order.  *See Rosa*

*v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (Where there are gaps in the

administrative record or the ALJ has applied an improper standard, it is appropriate for

the Court to order a remand under 42 U.S.C. § 405(g) for a rehearing.).

I.      **The ALJ's Conclusion that Ketcham's Right Shoulder Impairment is Non-
        severe is Unsupported by Substantial Evidence.**

At step two in the five-step sequential process, evaluation of whether an

impairment is severe "requires an assessment of the functionally limiting effects of an

impairment(s) on an individual's ability to do basic work activities."  SSR 96-3p, 1996

WL 374181, at *1 (July 2, 1996).  An impairment is considered "severe" if "it

significantly limits an individual's physical or mental abilities to do basic work

activities."  *Id.*  The step two severity regulation "constitutes a de minimis screening

device" and the Commissioner "is not precluded from implementing a threshold test of

medical severity to screen out claims that would clearly be disallowed."  *Gonzalez-Ayala*

*v. Sec. of Health and Hum. Servs.*, 807 F.2d 255, 256 (1st Cir. 1986); *Dixon v. Shalala*,

54 F.3d 1019, 1030 (2d Cir.1995), SSR 85-28, 1985 WL 56856 (1985).

The ALJ identified Ketcham's right shoulder injury as a non-severe impairment. (AR 14.)  This conclusion is unsupported by substantial evidence for two reasons.  First, the ALJ stated that Ketcham did not mention his right shoulder impairment at the hearing.  (*Id.*).  As the Commissioner concedes, this statement by the ALJ is incorrect. (Doc. 16 at 12, n.5.)  Second, although the ALJ found that Ketcham's shoulder condition did not meet the twelve-month durational requirement, in making this finding, the ALJ failed to consider record evidence indicating that Ketcham's shoulder injury dated to 2003 or 2004.

### A.    Hearing Testimony

The record reflects that Ketcham discussed his shoulder injury at length during his testimony and in fact answered questions from the ALJ about his shoulder.  (AR 37-39.)  Specifically, the ALJ asked Ketcham:

Q    [L]et's talk a little bit about your . . . shoulder issues at this point.  You had the scope and debridement in 2008.

A    Yes.

Q    And have the doctors said whether there's anything else they can do for your shoulder at this point?

A    Not really.  Basically I went to the therapy hoping that it, they suggested that I do the physical therapy, which it did.  And . . . it did improve after this surgery.  But . . . I'm at a point where I am not getting any better.  It's just what it is, I guess, at this point.

Q   Okay.  And how does it affect you know, at your house?  Do you have objects up in the cupboard?  Are you able to reach for them with your right hand?

A   I find myself using my left hand a lot. . . . I believe there's definitely some nerve issues from the shoulder into my right hand causing the problem . . . .

. . . .

Q   And you mentioned difficulty with numbness in that right hand.  What about holding objects?  Being able to carry dishes to the sink . . . ?

A   I have to be pretty careful. . . . [W]hen I go to pick [my glasses] up . . . I'll drop them because my fingers will be numb . . . .  I basically try to do as much as I can with my left hand, just to avoid dropping things or breaking things.

(AR 37-38.)

The ALJ also asked Ketcham about his ability to do fingering movement such as buttoning a shirt.  Ketcham replied, "I try to do most everything with my left [hand] . . . . I'm limited."  (AR 39.)  Ketcham mentioned his shoulder pain at three other points during the hearing.  (AR 41, 44-45, 51-52.)

Because the ALJ failed to consider this evidence, his conclusion at step two could not have included an accurate "assessment of the functionally limiting effects" of the shoulder impairment on Ketcham's "ability to do basic work activities."  SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).  Failure to consider this evidence also likely

impacted the ALJ's credibility determination and RFC determination. I recommend that, upon remand, the Court direct the ALJ to consider Ketcham's hearing testimony in assessing whether his right shoulder impairment was severe.

**B.      Twelve-Month Durational Requirement**

The Commissioner contends that the ALJ's erroneous statement regarding Ketcham's hearing testimony is of no consequence because substantial evidence supports the ALJ's conclusion that Ketcham's shoulder condition failed to remain at a disabling level for twelve continuous months. (Doc. 16 at 11-12); *see* 20 C.F.R. §§ 404.1509, 404.1522(b), 416.909, 416.922(b). I do not agree.

The record shows that Ketcham injured his shoulder in May or June 2008 and that he had also been treated for his shoulder condition as early as 2004. (AR 44, 336.) At the hearing, the ALJ stated: "Now there was a note in May of 2008 that you hurt your shoulder working on . . . an engine." Ketcham responded, "[T]hat was how I initially hurt my shoulder, sir." (AR 44.) A treatment note dated December 2004, however, states that Ketcham's shoulder injury dates to 2003. (AR 337-37.) In addition, several treatment notes dated July to December 2008 provide that Ketcham's shoulder injury dates to 2004. (AR 339-344.) The ALJ neither mentioned these records nor discussed why he failed to credit them.

Moreover, the records the ALJ cites in support of his conclusion that Ketcham's shoulder injury failed to meet the twelve-month durational requirement do not support such a conclusion. Specifically, the ALJ stated: "The claimant's shoulder injury arose in May 2008 (Exhibit 25F)." (AR 14, 642.) Exhibit 25F, however, is simply Ketcham's

post-surgery evaluation and does not state what the initial date of injury was. That record provides only that Ketcham "was pulling to start a ripcord type engine on 5/15/2008 when he felt a sudden onset of pain in his right shoulder." (AR 642.) Such evidence does not preclude a finding that Ketcham's initial date of injury was in 2003 or 2004, and that it thus met the durational requirement of a severe impairment. Accordingly, I recommend that the Court find that the ALJ's conclusion that Ketcham's right shoulder impairment is not severe is unsupported by substantial evidence.

## II.    The ALJ's Error at Step Two Was Not Harmless

In many cases, courts will find that error at step two is harmless when the ALJ finds other severe impairments at step two and proceeds through the sequential evaluation process. *See, e.g.*, *Bender v. Astrue*, No. 09-CV-880 (TJM/VEB), 2010 WL 5175023, at *4 (N.D.N.Y. Nov. 29, 2010) (citing cases). The reasoning for this is that, because the ALJ is required to consider both severe and non-severe impairments in determining RFC, any functional limitations arising from a non-severe impairment will ostensibly still be reflected. *See id.*; 20 C.F.R. § 404.1520(a)(4)(ii); *Bigwarfe v. Comm'r of Soc. Sec.*, No. 7:06- CV-1397 (LEK/DRH), 2008 WL 4518737 (N.D.N.Y. Sept. 30, 2008) ( "Where a claimant alleges multiple impairments, the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity." (citations omitted)).

In this case, however, the ALJ mistakenly failed to consider a substantial amount of significant evidence regarding significant functional limitations attributable to the shoulder impairment. As a result, the ALJ could not have applied the proper legal

standards in determining Ketcham's credibility and RFC, and I cannot conclude from the current record that the error was harmless. *See Kohler v. Astrue*, 546 F.3d 260, 262 (2d Cir. 2008).

### A.   Credibility

The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a); *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d. Cir. 1983) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe . . . as to preclude any substantial gainful employment."). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.* The ALJ must consider "[s]tatements [the claimant] or others make about [his] impairment(s), [his] restrictions, [his] daily activities, [his] efforts to work, or any other relevant statements [he] make[s] to medical sources during the course of examination or treatment, or to [the agency] during interviews, on applications, in letters, and in testimony in . . . administrative proceedings." 20 C.F.R. § 404.1512(b)(3); *see also* 20 C.F.R. § 404.1529(a).

Beyond dispute, it is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints. *Id.* (citing *McLaughlin*, 612 F.2d at 704). When evaluating the credibility of an individual's statements, however, "the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Here, the ALJ erred by overlooking statements Ketcham made at the hearing about his right shoulder impairment as well as medical evidence of record indicating that the shoulder impairment dates to 2003 or 2004. As laid out above, when asked by the ALJ how his shoulder affects him at home, Ketcham replied that, although he is right-handed, he finds himself using his left hand "a lot." (AR 37-38.) Ketcham also testified that he had frequent numbness in his hand that causes him to drop things, and that he is generally "limited." (*Id.*) Mistakenly stating that Ketcham did not mention his shoulder impairment at the hearing, the ALJ was unable to consider the entire case record or give specific reasons for the weight given to particular statements, and therefore unable to evaluate the credibility of the statements. Thus, I recommend that, upon remand, the ALJ re-assess Ketcham's credibility in light of the evidence discussed above.[2]

---

[2] I also note that Ketcham has a substantial and consistent work history, having worked as an auto mechanic and technician from 1985 to 2005. (AR 147.) This factor should be considered in assessing Ketcham's credibility upon remand. *Carvey v. Astrue*, 380 Fed. Appx. 50, 53 (2d Cir. 2010) ("To be sure, a good work history may be deemed probative of credibility."(quotation omitted)).

**B.    RFC**

RFC is defined as "the most [a claimant] can still do despite [his] limitations."  20

C.F.R. § 416.945(a)(1).  In assessing RFC, the ALJ considers "all  . . . medically

determinable impairments . . . including . . . medically determinable impairments that are

not 'severe.'"  20 C.F.R. § 416.945(a)(2).  The assessment is based on "all of the relevant

medical and other evidence."  20 C.F.R. § 416.945(a)(3).  Here, the ALJ's failure to

consider Ketcham's testimony and the records indicating that Ketcham's shoulder injury

dated to 2003 or 2004 necessarily prevented the ALJ from properly assessing RFC.  The

same statements laid out above show that Ketcham testified to significant functional

limitations arising from his shoulder impairment which were mistakenly overlooked and

therefore not considered by the ALJ.

I disagree with the Commissioner's assertion that, as long as "Ketcham made it

past this screening step" at step two, "the details of the ALJ's analysis at this preliminary

stage are not particularly significant."  (Doc. 16 at 24.)  The Commissioner grounds this

assertion in *Bowen v. Yuckert*, 482 U.S. 137, 147-54 (1987) and *Carpenter v. Astrue*, 537

F.3d 1264, 1266 (10th Cir. 2008).  The Commissioner's reading of these cases is

incorrect.

In *Yuckert*, the United States Supreme Court ruled upon the validity of the

regulations that define the scope of step two analysis, 20 C.F.R. §§ 404.1520(c),

416.920(c).  *Yuckert*, 482 U.S. at 146-50.  The Court held that the regulations are

consistent with their authorizing legislation, 42 U.S.C. 423(d)(1)(A), and that, in

determining whether an impairment is severe, as provided by the regulations, the

Commissioner need not consider the claimant's age, education, and work experience. *Id.* at 146-47; 20 C.F.R. §§ 404.1520(c), 416.920(c). In so holding, the Court described the step two analysis as being a "threshold showing of severity." *Id.* at 147. It further stated that "[t]he [step two] severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Id.* at 153. *Yuckert* does not address how an error at step two would affect other steps in the analysis.

*Carpenter* is even less supportive of the Commissioner's argument that the step two error in this case is of no consequence. The Commissioner states that *Carpenter* stands for the proposition that "any error at step two is harmless when the ALJ finds that a claimant cannot be denied benefits at this step and proceeds to the next step." (Doc. 16 at 24.) It does not.

In *Carpenter*, the claimant argued that the ALJ erred at step two by failing to consider the combined effect of her impairments as required by 20 C.F.R. §§ 404.1523, 416.923. *Carpenter*, 537 F.3d at 1265-66. In reversing the District Court's denial of benefits, the Tenth Circuit did not address this argument in detail. It simply noted that "any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Id.* at 1266. The claimant in *Carpenter* did not raise the argument that is being raised here - that the ALJ mistakenly overlooked significant testimony and medical records, thereby clearly failing to consider and address this

evidence.  The Tenth Circuit's isolated statement on the step two issue was neither interpretation nor analysis of what effect a step two error might have upon subsequent steps generally.  Moreover, in discussing the ALJ's analysis at step five, the *Carpenter* court stated that

> the ALJ's analysis at step five where he determined that [the claimant] had the capability of performing other available work is undercut by his failure to discuss the evidence in [the claimaint's] favor at preceding steps.  A proper determination of the combined impact of her impairments on her ability to work underlies a proper finding of her mental and physical residual functional capacities . . . .

*Id.* at 1270.  This language directly contradicts the Commissioner's reading of what *Carpenter* stands for.

 An error is harmless "where application of the correct legal principles to the record could lead to only one conclusion."  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  In such cases, "there is no need to require agency reconsideration."  For the reasons discussed above, this case does not present a situation where application of the correct legal standard leads to only one conclusion.  Under the facts of this case, the ALJ's erroneous conclusion at step two likely affected the ALJ's credibility determination and the RFC determination.

## III.   Other Issues to Address upon Remand

In light of the conclusions above, upon remand, the ALJ should consider the additional evidence of Ketcham's shoulder impairment.  The ALJ should also consider what effect this evidence may have upon his credibility determination and his RFC determination.

The undersigned further takes note of an inconsistent conclusion drawn by the ALJ. Specifically, the ALJ found that Ketcham was disabled beginning September 1, 2009 and continued to be disabled through the date of the decision. (AR 12, 20.) The ALJ also found, however, that Ketcham's date last insured was June 30, 2009. (AR 12.) Inconsistently, the ALJ then concluded that "the insured status requirements . . . were met as of the date disability is established." (*Id.*) Because these findings are internally inconsistent, they cannot all be supported by substantial evidence. *See Jeffries v. Astrue*, 254 Fed. Appx. 601, 603 (9th Cir. 2007); *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997).

The ALJ's inconsistent findings were purportedly clarified by the DRB upon review (AR 4), however, the DRB failed to conduct any analysis with specificity or clarity allowing for meaningful review by this Court. *See Fleetwood v. Barnhart*, 211 Fed. Appx . 736, 739 (11th Cir. 2007). The DRB simply issued a "corrective finding" of the ALJ's "clearly erroneous" statement, and concluded that Ketcham was not entitled to disability insurance benefits. (AR 5.) Upon remand, the ALJ should address the issues related to the DRB's "corrective finding," including date last insured, disability onset date, and Medical-Vocational Rule 201.21, and clarify any inconsistent findings by conducting analysis that permits meaningful review by this Court.

Finally, although the ALJ purportedly gave "great weight" to Dr. Kornbluth's November 2008 treating source statement (AR 17), the ALJ failed to address or mention Dr. Kornbluth's statement regarding Ketcham's ability to maintain attention and concentration during an eight-hour work day (AR 645). Upon remand, the ALJ should

address this aspect of the treating source statement, and, if necessary, reflect any additional limitations in the RFC.

## Conclusion

For the reasons stated above, I recommend that Ketcham's motion to reverse the Commissioner's decision and remand for further proceedings (Doc. 11) be GRANTED and that the Commissioner's motion to affirm such decision (Doc. 16) be DENIED.  I further recommend that the matter be remanded to the Social Security Administration pursuant to 42 U.S.C. 405(g) for further proceedings consistent with this Report and Recommendation.

Dated at Burlington, in the District of Vermont, this 2nd day of May, 2011.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c). Failure to timely file such objections operates as a waiver of the right to appellate review of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P. 72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).