U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JUL 25 AM 10: 22

CLERK
BY ＰＭ
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| TIMOTHY KETCHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-140 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER
## AFFIRMING COMMISSIONER'S FINAL DECISION
(Docs. 20, 21)

This matter came before the court on the Objection of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner") (Doc. 21), to the Magistrate Judge's Report and Recommendation ("R & R"), filed on May 2, 2011 (Doc. 20). In the R & R, the Magistrate Judge recommended granting Plaintiff Timothy Ketcham's motion for an Order reversing the Commissioner's decision denying his application for disability insurance benefits and remanding for further proceedings (Doc. 11), and denying the Commissioner's motion to affirm the same (Doc. 16).

The Commissioner objects to the R & R, contending that (1) the Administrative Law Judge ("ALJ") properly found that Plaintiff's shoulder condition was not a severe impairment; (2) any error at step two of the five-step sequential disability evaluation process was harmless because the ALJ considered all of Plaintiff's impairments at later stages of the process; and (3) the ALJ's analysis at those later stages was proper. Plaintiff counters that the Magistrate Judge's R & R should be adopted, as it correctly reflects errors made by the ALJ.

Plaintiff is represented by Francis M. Jackson, Esq. The Commissioner is represented by Assistant United States Attorney Carol L. Shea.

## I. Factual and Procedural Background.

The parties do not dispute the Magistrate Judge's recitation of the operative facts. The court thus adopts them verbatim:

> Ketcham was 45 years old on the alleged disability onset date. (Administrative Record ("AR") 122.) He graduated from high school in 1978 and has completed vocational training through his prior work as a mechanic and auto technician. (AR 29, 150.) Ketcham lives with his mother and has one adult son with whom he does not have regular contact. (AR 123.) He has a history of alcohol abuse but has not consumed alcohol in more than eight years. (AR 364, 405.) Ketcham applied for disability insurance benefits and supplemental security income based upon diagnoses of degenerative disc disease of the lumbar spine, non-cardiac chest pain, adjustment disorder, right shoulder labral tear, and left knee patellar impact injury. (AR 14, 33, 144, 195.)
>
> Ketcham worked as a mechanic and auto technician from 1985 to 2005. (AR 145.) In an October 2007 disability report (Form SSA-3368), Ketcham reported that he injured his back in September 2005 and became unable to work as a result of his condition in December 2005. (AR 144.) Subsequent reports from 2008 show that Ketcham reported a "right shoulder tear condition" that "causes right hand [and] fingers [to be] numb" and "loss of movement in right arm." (AR 187.) He further reported at that time that his back pain caused him difficulty in getting out of bed and that he was experiencing knee pain. (AR 181-82, 191.)
>
> In his 2007 Function Report, Ketcham stated that his daily activities consist of a shower, low back exercises, lying on a heating pad, light household chores, and watching television. (AR 165.) Ketcham further reported that his condition wakes him from sleep every night and that he has difficulty putting on socks and shoes by himself and using the toilet. (AR 166.) He is able to do some basic meal preparation and minimal housework, but no yard work due to his back pain. (AR 167-68.) Ketcham cannot drive a car, and when he leaves the home he needs someone to accompany him because he has "difficulty lifting [his] left leg especially walking up stairs." (AR 168-69.) He reported that he shops weekly for groceries and is able to handle money on his own when he has an income. (AR 168-69.) Ketcham is unable to do any hobbies he once did, including sports and outdoor activities, and he has limited social interaction with friends. (AR 169.)
>
> Ketcham further reported that his conditions affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (AR 170.) Specifically, he reported that he can lift no more than fifteen pounds and

> can walk only 500 feet before requiring three to five minutes of rest. (AR 170.) He requires a back brace (AR 171) and walks with a limp. (AR 35). Ketcham can follow written and spoken directions well, handle stress and changes in routine, and get along with authority figures. (AR 171.)
>
> At the time of his hearing before Administrative Law Judge ("ALJ") Edward Hoban, Ketcham reported taking oxycodone, lisinopril, and Zanaflex. (AR 39.) He testified that these medications make him groggy during the day (AR 41) and that, despite the medications, he has difficulty with any kind of mobility due to pain and numbness:
>
>> I can't put . . . a lot of weight on my left leg. And I limp. So I'm unable to stand and bear weight on both legs. So it's difficult[ ]. I have to be careful about my balance. And it's difficult for me to maneuver because of the limp and the condition with the pain radiating down my left leg.
>
> (AR 35.) Ketcham further testified that he has experienced continued problems with his right shoulder since he had surgery to repair a labral tear in 2008. He relies primarily on his left hand due to numbness in his right hand as a result of his shoulder condition. (AR 37-39.) When asked if he could lift or carry things, Ketcham stated: "Just getting myself around is a task. So I don't usually try to carry anything." (AR 40.)

(Doc. 20 at 2-4.)

In January 2010, the ALJ issued a partially favorable decision finding that Plaintiff became disabled with regard to disability insurance benefits beginning September 1, 2009. (AR 12, 20.) The Decision Review Board ("DRB") selected the ALJ's decision for review and issued a "corrective, partially favorable decision." (AR 4.) The DRB changed the date that Plaintiff met the insured status requirements from September 1, 2009 to June 30, 2009. (AR 4.) As a consequence, the DRB found that Plaintiff was not "entitled to a period of disability and disability insurance benefits" (AR 4), although the DRB did not change the ALJ's findings with respect to Plaintiff's application for supplemental security income. Having exhausted his administrative remedies, Plaintiff filed the instant action on June 16, 2010. (Doc. 5.)

## II. The ALJ's Decision.

The ALJ applied the five-step analysis employed by the Commissioner to ascertain whether a claimant is disabled under the Social Security Act[1] to evaluate Plaintiff's disability claim. He first found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 15, 2005. At step two, he found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. The ALJ also found that Plaintiff had two non-severe impairments, a right shoulder injury and an adjustment disorder, and stated that Plaintiff "mentioned neither of these impairments at the hearing." (AR 14.)[2] The ALJ further found:

> The claimant's shoulder injury arose in May 2008 (Exhibit 25F). Following arthroscopic surgery on his shoulder in September 2008, the clamant reported doing well; there was no mention of right shoulder issues after that (Exhibit 23F). He has not had treatment for his shoulder since December 2008 and in late 2008 there was some concern regarding his use of medication (Exhibit 3F9-10). Further, the claimant began seeing a new

---

[1] The five-step analysis is conducted as follows:

> The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires him to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).
>
> If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth and final step requires the ALJ to determine whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts[v. Barnhart]*, 388 F.3d [377,] 383 [2d Cir. 2004], and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009)[.]

*Zokaitis v. Astrue*, 2010 WL 5140576, at *5-6 (D. Vt. Oct. 28, 2010).

[2] Both parties agree that Plaintiff did in fact mention his shoulder injury at the hearing.

4

>physician, Dr. Jewett, who never significantly discussed the shoulder injury (Exhibit 31F). Thus the claimant's shoulder injury does not satisfy the twelve month durational requirement for a severe impairment.

(AR 14.)

The ALJ determined, at step three, that since the alleged onset date, Plaintiff had no impairment or combination of impairments that met or medically equaled one of the listed impairments in the Listings. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to

>perform sedentary work . . . except that he was limited to lifting and carrying ten pounds both occasionally and frequently; standing and walking two hours and sitting a total of six hours in an eight hour work-day; occasional climbing, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and frequent balancing, stooping, and kneeling. He is to avoid concentrated exposure to extreme[s] of temperature, wetness, vibration, and hazards.

(AR 15.) In so concluding, the ALJ reviewed the difficulties Plaintiff allegedly experienced as a result of his degenerative disc disease. With regard to his shoulder injury, the ALJ noted that Plaintiff "further alleged that he is unable to sleep on his right side due to his shoulder pain, he drops things due to numbness in his hands, and he uses his left non-dominant hand." (AR 16.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with a sedentary RFC.

The ALJ went on to find that Plaintiff was unable to perform any past relevant work since September 15, 2005. The ALJ also pointed out that, prior to September 1, 2009, Plaintiff was a younger individual (between the ages of 45-49), according to the "Grids," 20 C.F.R. Part 404, Subpart P, Appendix 2, but after that date, the ALJ elected to consider him as a person of "advanced age" (achieved on a claimant's 50th birthday) because Plaintiff was four months short of that milestone. *See* 20 C.F.R. § 404.1563. The ALJ found that Plaintiff became disabled on September 1, 2009 date through the date of the decision (January 25, 2010).

5

As indicated above, the DRB amended the ALJ's decision to correct Plaintiff's last day insured (June 30, 2009), and concluded that Plaintiff was not entitled to disability insurance benefits because Plaintiff did not meet the insured status requirements as of the disability onset date of September 1, 2009.[3]

### III.   The Magistrate Judge's R & R.

The Magistrate Judge determined that the ALJ's conclusion that Plaintiff's right shoulder impairment was not severe was unsupported by substantial evidence, and recommended that the court reverse the Commissioner's decision and remand for further proceedings. The Magistrate Judge also found that the ALJ erred in failing to consider record evidence that Plaintiff's shoulder injury dated from 2003 or 2004 when the ALJ concluded that Plaintiff's shoulder impairment did not meet the twelve-month durational requirement for a "severe" impairment. Finally, the Magistrate Judge concluded that the ALJ's error at step two was not harmless, as "the ALJ mistakenly failed to consider a substantial amount of significant evidence regarding significant functional limitations attributable to the shoulder impairment. As a result, the ALJ could not have applied the proper legal standards in determining [Plaintiff's] credibility and RFC[.]" (Doc. 20 at 15-16.)

In recommending remand, the Magistrate Judge proposed that the ALJ consider record evidence of Plaintiff's shoulder impairment to determine what effect that evidence may have had upon the ALJ's credibility and RFC determinations. The Magistrate Judge also recommended that, on remand, that the ALJ should address a November 2008

---

[3] The Magistrate Judge recommended that, on remand, the ALJ explain in greater detail the DRB's clarification of the ALJ's decision, as the DRB "failed to conduct any analysis with specificity or clarity allowing for meaningful review by this [c]ourt." (Doc. 20 at 21.) The DRB's corrective finding was sufficiently clear and is not contested by the parties. In light of the court's affirmance of the ALJ's decision, remand for the sole purpose of further explaining this statement is not warranted.

6

statement by Plaintiff's treating physician, Dr. Kornbluth, regarding Plaintiff's ability to maintain attention and concentration.[4]

## IV. Standard of Review.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## V. Analysis and Conclusions of Law.

### A. Did the ALJ Err in Finding that Plaintiff's Shoulder Condition was Not Severe?

The Magistrate Judge found the ALJ erred in finding that Plaintiff's shoulder condition was not severe because the ALJ: (1) mistakenly stated that Plaintiff failed to mention that condition during the hearing; and (2) failed to consider a December 2004 treatment note wherein Plaintiff complained of shoulder pain from an injury sustained in November 2003. The Commissioner asserts that these errors did not affect the ALJ's step two determinations, and that the ALJ properly determined that Plaintiff's shoulder

---

[4] Dr. Kornbluth completed a "medical source statement of ability to do work related activities (physical)" in January 2005. One of the questions asked: "Is it medically reasonable to expect that this patient's ability to maintain attention and concentration on work tasks throughout an 8 hour day is significantly compromised by pain, prescribed medication or both?" (AR 645.) Dr. Kornbluth responded "Yes – not yet sure if 2nd gain involved but [patient] unduly anxious about pain." *Id.* This response, by itself, is not sufficient to necessitate remand, particularly when the doctor expressed some concern that Plaintiff's complaints of pain may have been motivated by secondary gain. Here, too, in light of the court's affirmance of the ALJ's decision, remand for the sole purpose of exploring this statement is not warranted.

7

impairment was not severe because it did not meet the twelve-month durational requirement under SSA regulations.

At step two, an ALJ must decide whether a claimant has a medically determinable impairment or combination of impairments that are severe. *See* 20 C.F.R. § 416.920(a)(4)(ii). The ALJ determined that Plaintiff's shoulder injury constituted an impairment, but that it was not severe. "[T]he 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Bender v. Astrue*, 2010 WL 5175023, at *4 (N.D.N.Y. Nov. 29, 2010) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). An impairment is considered severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include "the abilities and aptitudes necessary to do most jobs," such as the physical functions of "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling[.]" 20 C.F.R. § 416.921(b)(1). Also, "[t]o be severe, the impairment must satisfy a durational requirement of twelve months." *DeJesus v. Astrue*, 2011 WL 2076447, at *3 (D. Conn. May 26, 2011) (citations omitted); *see also* 20 C.F.R. §404.1509, 404.1520(a)(4)(ii).

The R & R is correct in observing that one treatment note, from a physician's assistant at the Vermont Orthopedic Clinic, dated December 20, 2004, indicates that Plaintiff complained about pain in his right shoulder arising from a work injury in November 2003. (AR 335-337.) Plaintiff was assessed with "AC arthritic changes on the right" (AR 336), and was referred for physical therapy, with follow-up in six weeks. The treatment note further states that Plaintiff could "work as tolerated but [should] use caution at work at or above shoulder levels." (AR 337.) The record contains no further medical records relating to this 2003 shoulder injury. Plaintiff's next visit to a doctor for shoulder discomfort occurred three and a half years later, on July 1, 2008, following Plaintiff's attempt on June 19, 2008 to operate a log splitter. (AR 338.) The July 1, 2008 treatment note states that Plaintiff suffered a "probable right shoulder rotator cuff tear," and that he would undergo an MRI scan. (AR 338.) The MRI revealed a "small tear in

the anterior-inferior labrum of the shoulder," which in most people "would be reasonably asymptomatic." (AR 339.) Subsequent treatment notes indicate that Plaintiff's shoulder pain continued. Plaintiff opted for surgery, which took place in September 2008. (AR 339-342.) A December 2, 2008 treatment note indicates that Plaintiff was involved in a motor vehicle accident on November 29, 2008, and suffered increased pain in his shoulder, but that the accident was not expected to impact his recovery from surgery. (AR 344.) A December 15, 2008 treatment note indicated that Plaintiff should return to physical therapy to reduce inflammation caused by the car accident, and suggested Plaintiff take anti-inflammatory medicines like Motrin or Advil in lieu of narcotics. (AR 346.) The record shows that Plaintiff made no further complaints of shoulder pain after December 2008.

Plaintiff has the burden of proving, at step two, that his impairment was severe, which includes a showing that the impairment lasted at least twelve months. *See Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004) (opining that a claimant "bears the burden of proving his or her case at steps one through four[.]"). Plaintiff failed to identify any connection between his 2003 shoulder injury and his shoulder injury in June 2008, which would tend to show that it was the same injury and thus satisfy the duration requirement. Plaintiff continued to work following the 2003 injury until suffering a back injury in September 2005. Moreover, Plaintiff himself testified that he "*initially* hurt [his] shoulder" in 2008, when discussing his allegedly disabling physical impairments, and made no claim that the 2008 event was a re-injury. *See* AR 44, emphasis supplied. Substantial evidence thus supports a conclusion that Plaintiff's shoulder injury that he claims was disabling began in June 2008 and lasted until approximately December 2008, a period of less than twelve months. The ALJ thus properly found the impairment was not severe.[5]

---

[5] The court found no other references to the 2003 shoulder injury in the record. The first treatment note provides that Plaintiff "was pulling to start a ripcord type engine on 5/15/2008 when he felt a sudden onset of pain in his right shoulder." (AR 642.) The subsequent 2008 treatment notes concerning shoulder injury relate to that woodsplitter injury. However, some of those treatment notes, in handwriting at the top of the form, refer to the injury date for the event

9

The court therefore declines to adopt the Magistrate Judge's finding that Plaintiff's shoulder injury was severe because Plaintiff met the twelve-month durational requirement.[6]

### B. Whether the ALJ's Credibility and RFC Determinations were Erroneous.

The Magistrate Judge found that the ALJ erred by overlooking (1) statements Plaintiff made at the hearing about his shoulder impairment and (2) medical evidence indicating that Plaintiff's shoulder impairment dated to 2003 or 2004, and that these errors affected the ALJ's credibility and RFC determinations.

Although ALJ was mistaken in stating that Plaintiff did not mention his shoulder condition at the hearing, the ALJ clearly considered that testimony, finding that Plaintiff "further alleged that he is unable to sleep on his right side due to his shoulder pain, he drops things due to numbness in his hands, and he uses his left non-dominant hand." (AR 16, 37-39.)

With regard to Plaintiff's credibility on this issue and others, the ALJ observed that

> The claimant's activities of daily living are not consistent with a finding of disability. He reported to a consultative examiner that he goes for morning walks daily then spends the rest of his day reading or watching television, doing the laundry, or helping to prepare meals; he tries to help with the shopping. He testified that he moves around during the day, tries to get outside, and uses the heating pad. These activities are consistent with the above residual functional capacity. Further, the record reflects that the claimant on more than one occasion had positive results from drug screening tests. In July 2006 his urine drug screen test was positive for cocaine and negative for Oxycodone, despite the fact that he was prescribed Percocet, which contains Oxycodone. The claimant was required to undergo an evaluation for drug addiction at that time. In March 2009, a

---

as "6/19/04." This date does not correspond to either Plaintiff's November 2003 shoulder injury date or the May 2008 shoulder injury date, and the 2008 treatment notes do not explain where the 2004 injury date comes from. Even though medical records indicate the 2008 injury occurred on both May 15, 2008 or June 19, 2008, the difference is not meaningful in terms of the durational requirement.

[6] Since the court finds that the ALJ did not err at step two, it does not address the parties' arguments whether the ALJ's error at step two was harmless.

10

> urine toxicology screen returned detecting benzodiazepines and opiates, the presence of which he could not explain. The misuse of narcotic medication raises a concern as to the actual levels of pain experienced by the claimant.

(AR 16.)

"It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Knepp v. Astrue*, 2011 WL 1232225, at *9 (N.D.N.Y. Mar. 30, 2011) (quoting *Carroll v. Sec'y of HHS*, 705 F.2d 638, 642 (2d Cir. 1983)). If the ALJ's "findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." *Aponte v. Sec'y, Dep't of HHS*, 728 F.2d 588, 591 (2d Cir. 1984) (citations omitted).

Here, the ALJ concluded that Plaintiff's testimony that he engaged in a broad range of activities was inconsistent with a finding of disability. The ALJ also cited Plaintiff's misuse of narcotic medication as impacting Plaintiff's credibility. *See Poppa v. Astrue*, 569 F.3d 1167, 1172 (10th Cir. 2009) (observing that ALJ's determination that claimant's credibility about her pain and limitations was compromised by her drug-seeking behavior). The ALJ's credibility finding was thus supported by substantial evidence, and this court is not at liberty to substitute its credibility determination for that of the ALJ. *See Comerota v. Astrue*, 2011 WL 940306, at *14 (N.D.N.Y. Mar. 16, 2011) (stating that district court "may not reweigh the evidence and substitute its views for those of the ALJ") (citations omitted)).

With regard to Plaintiff's RFC, the ALJ found that Plaintiff's "activities of daily living, in addition to the lack of objective medical evidence about continuing limitations, support the conclusion that he retains a substantial [RFC]." (AR 17.) The Magistrate Judge concluded, however, that the ALJ erred in assessing Plaintiff's RFC by failing to consider the 2003 shoulder injury. It is well-settled that "'medical opinions of any physician, treating or examining, which predate the alleged onset of disability [here, September 2005] are not considered substantial evidence.'" *Lewis v. Astrue*, 2011 WL 1085254, at *8 (D. Or. Feb. 15, 2011) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*,

11

533 F.3d 1155, 1165 (9th Cir. 2008)). Furthermore, the information contained in the treatment note about the 2003 injury is not inconsistent with the ALJ's RFC finding that Plaintiff could perform sedentary work. The 2003 note provided that Plaintiff had a "full range of motion of the right rotator cuff"; "[s]trength is good for abduction in the horizontal plane"; and "[h]e may work as tolerated but use caution at work at or above shoulder levels." (AR 336, 337.) At the time, Plaintiff was working as an automobile mechanic, classified at a medium level of exertion. *See Aragon v. Astrue*, 2010 WL 4180574, at *3 n.3 (C.D. Cal. Oct. 20, 2010). Therefore, to the extent the ALJ considered that treatment note, it would have weighed in favor of the ALJ's RFC conclusion, not against it.

The court finds that the ALJ's credibility and RFC determinations are supported by substantial evidence. It thus rejects the Magistrate Judge's conclusions that the ALJ erred in these determinations and that such error was not harmless.

## CONCLUSION

For the reasons stated above, the court hereby declines to adopt the Magistrate Judge's R & R, and AFFIRMS the Commissioner's decision, as corrected by the DRB. SO ORDERED.

Dated at Rutland, in the District of Vermont, this 22nd day of July, 2011.

Christina Reiss, Chief Judge
United States District Court